## NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

## QUEEN INDUSTRIAL PRODUCTS CORPORATION, Respondent.

### No. 01–1359.

United States Court of Appeals, Sixth Circuit.

May 9, 2001.

Before JONES, SILER, and GILMAN, Circuit Judges.

### JUDGMENT

The National Labor Relations Board (the "Board") applies for summary en-forcement of its November 16, 2000, decision and order in Cases No. 9–CA–35556, 9–CA–35682, and 9–CA–37718, in which it found the respondent violated federal labor law and directed the respondent to take certain remedial steps stated therein. The respondent filed an answer to the complaint, but later withdrew that answer and has not made a further appearance either before the Board or this court. Under these circumstances, we conclude the Board is entitled to the relief sought. *See* 29 U.S.C. § 160(e) ("No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances.")

It therefore is ORDERED that the Board's decision and order in Cases No. 9–CA–35556, 9–CA–35682, and 9–CA–37718 is hereby enforced. The respondent, Queen Industrial Products Corporation, Louisville, Kentucky, its officers, agents, successors, and assigns, shall:

1. Cease and desist from:

(a) Failing and refusing to bargain with International Brotherhood of Electrical Workers, Local 369, AFL–CIO, as the exclusive representative of the employees in the appropriate unit set forth below, by failing to maintain the unit employees' pervious medical insurance; changing insurance carriers; increasing medical insurance deductions for employees; making deductions for life insurance from employees' paychecks; failing to grant personal days to employees who maintained less than a 3–percent absentee rate; and denying and extra week's vacation to employees who were entitled to it on the basis of their seniority. The unit is:

All employees employed by the respondent at its Louisville, Kentucky, facility, in the manufacture of electrical materi-

als, devices, and equipment, and shipping department employees, but excluding all professional employees and all guards and supervisors as defined in the National Labor Relations Act (the "Act").

(b) Refusing to furnish the union information that is relevant and necessary to its role as the exclusive bargaining representative of the unit employees.

(c) In any like or related manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed them by Section 7 of the Act.

2. Take the following affirmative action which the Board has found necessary to effectuate the policies of the Act:

(a) Restore the status quo ante that existed before the respondent, on January 1, 1998, changed insurance carriers, increased medical insurance deductions for employees, and commenced making deductions for life insurance from employees' paychecks.

(b) Make whole the unit employees for any loss of benefits or expenses resulting from its failure to maintain the unit employees' previous medical insurance from June 27, 1997, through December 1997, and from July 1999 until February 8, 2000, and its changing of insurance carriers on January 1, 1998, as set forth in the remedy section of the Board's decision and order.

(c) Make whole the unit employees for any loss of earnings suffered as a result of the respondent's failing in August 1997 to grant personal days to employees who maintained less than 3–percent absentee rate; denying, in October 1997, an extra week's vacation to employees who were entitled to it on the basis of their seniority; increasing medical insurance deductions for employees on January 1, 1998, and making deductions for life insurance from employees' paychecks beginning on January 1, 1998, as set forth in the remedy section of the Board's decision and order.

(d) Furnish the union with the information requested by it on or about April 26, 2000, except for the 1997 and 1998 tax returns and the material safety data sheets, which have been furnished.

(e) Preserve and, within 14 days of a request, make available to the Board or its agents, for examination and copying, all payroll records, social security payment records, timecards, personnel records and reports, and all other records, including an electronic copy of such records if stored in electronic form, necessary to analyze the amount of backpay due under the terms of this judgment.

(f) Within 14 days after service by the Region, post at its facility in Louisville, Kentucky, copies of the attached notice marked "Appendix." Copies of the notice, on forms provided by the Regional Director for Region 9 of the National Labor Relations Board (Cincinnati, Ohio), after being signed by the respondent's authorized representative, shall be posted by the respondent immediately upon receipt and maintained for 60 consecutive days in conspicuous places, including all places where notices to employees are customarily posted. Reasonable steps shall be taken by the respondent to ensure that the notices are not altered, defaced, or covered by any other material. In the event that, during the pendency of these proceedings, the respondent has gone out of business or closed its facility involved in these proceedings, the respondent shall duplicate and mail, at its own expense, a copy of the notice to all current employees and former employees employed by the respondent at any time since June 27, 1997.

(g) Within 21 days after service by the Region, file with the Regional Director a sworn certification of a responsible official

on a form provided by the Region attesting to the steps that the respondent has taken to comply with this judgment.

### APPENDIX

NOTICE TO EMPLOYEES POSTED PURSUANT TO A JUDGMENT OF THE UNITED STATES COURT OF APPEALS ENFORCING AN ORDER OF THE NATIONAL LABOR RELATIONS BOARD

An Agency of the United
States Government

The National Labor Relations Board has found that we violated the National Labor Relations Act and has ordered us to post and abide by this notice.

WE WILL NOT fail and refuse to bargain with International Brotherhood of Electrical Workers, Local 369, AFL–CIO as the exclusive representative of the employees in the appropriate unit set forth below, by failing to maintain the unit employees' previous medical insurance; changing insurance carriers; increasing medical insurance deductions for employees; making deductions for life insurance from employees' paychecks; failing to grant personal days to employees who maintained less than a 3–percent absentee rate; and denying an extra week's vacation to employees who were entitled to it on the basis of their seniority.

All employees employed by us at our Louisville, Kentucky facility, in the manufacture of electrical materials, devices, and equipment, and shipping department employees, but excluding all professional employees and all guards and supervisors as defined in the Act.

WE WILL NOT refuse to furnish the Union information that is relevant and necessary to its role as the exclusive bargaining representative of the unit employees.

WE WILL NOT in any like or related manner interfere with, restrain, or coerce you in the exercise of the rights guaranteed you by Section 7 of the Act.

WE WILL restore the status quo ante that existed before we, on January 1, 1998, changed insurance carriers, increased medical insurance deductions for employees, and commenced making deductions for life insurance from employees' paychecks.

WE WILL make whole the unit employees for any loss of benefits or expenses resulting from our failure to maintain the unit employees' previous medical insurance from June 27, 1997 through December 1997, and from July 1999 until February 8, 2000, and our changing of insurance carriers on January 1, 1998, with interest.

WE WILL make whole the unit employees for any loss of earnings suffered as a result of our failure in August 1997 to grant personal days to employees who maintained less than a 3–percent absentee rate; our denial, in October 1997, of an extra week's vacation to employees who were entitled to it on the basis of their seniority; our increasing medical insurance deductions for employees on January 1, 1998; and our making deductions for life insurance from employees' paychecks beginning on January 1, 1998, with interest.

WE WILL furnish the Union the information requested by it on about April 26, 2000, except for the 1997 and 1998 tax returns and the material safety data sheets, which have been furnished.